Matthias, J.
 

 The contention of the defendant that the expense of hiring attorneys, detectives, and secret service officers to secure the enforcement of the prohibition law may be paid out of the fines collected for the violation of such law, and the remainder thereof divided equally between the village and the state, is based upon the provisions of Section 6212-37, General Code, which reads as follows:
 

 “The council of any city or village may, by ordinance, authorize the use of any part of the fines collected for the violation of any law prohibiting the manufacture and sale of intoxicating liquors, for the purpose of hiring attorneys, detectives, or secret service officers to secure the enforcement of such prohibition law. And such council are hereby authorized to appropriate not more than five hundred dollars, annually from the general revenue fund, for the purpose of enforcing the law prohibiting the manufacture and sale of intoxicating liquors, when there are no funds available from the fines collected for the violation of such prohibitory law.”
 

 The view of the Attorney General is that the authorization of the expenditure of the fund realiz
 
 *522
 
 ed from the collection of such fines applies only to the portion of the fines which by force of other statutory provisions go into the village treasury and become the funds of the village.
 

 “Under the provisions of Section 6212-19, General Code, one-half of the money arising from fines and forfeited bonds resulting from the enforcement of the provisions of the state prohibition law, known as the Crabbe Act, goes, to the state treasury, and one-half thereof to the treasury of the county, municipality, or township, of the judge or magistrate before whom the prosecution is held.”
 
 Barth
 
 v.
 
 State ex rel.,
 
 107 Ohio St., 154, 140 N. E., 650.
 

 By virtue of the provisions of this section (Section 6212-19), it is the clear duty of the magistrate, upon collecting a fine in any such ease, to pay one half thereof into the treasury of the subdivision he represents and the other half to the state. This provision was not expressly repealed, and the enactment of 'Section 6212-37, General Code, cannot be regarded as a repeal thereof by implication, for they are not in irreconcilable conflict.
 

 Council may authorize the employment of persons to secure the enforcement of the prohibition law, and authorize their payment either from the fines collected or from funds appropriated for such purpose from the general revenue fund of the municipality, not exceeding $500'. Clearly this contemplates the use only of the funds of the municipality, and not of any moneys from whatever source derived which under the statute belong to the state. While the mayor is an executive
 
 *523
 
 officer of the village, he is also a magistrate, and it is in his capacity as a magistrate that he assesses and collects fines for the violation of law, and as such magistrate he disburses the fund in the manner required by law, in this instance, one half to the village treasury and the other half to the state.
 

 Section 4270, General iCbde, requires that all fines and forfeitures collected by a mayor in state cases shall be paid by him to the county treasury on the first business day of each month. The only limitation by statute upon this provision, in so far as it refers to all fines and forfeitures collected in state cases, is that made by the provisions of Section '6212-19, General Code, the substance of which is above stated, and it requires that one-half of the fines and ¡forfeitures in cases under that act shall go to the state treasury. It is to be observed that under its provisions one-half the fines and forfeitures in prohibition oases prosecuted under the state law now goes into the general revenue fund of the state, although in prosecutions in other state cases all fines and forfeitures go to the county treasury and no part thereof to the municipal treasury. It would seem that, had the Legislature intended that more than one-half of such fines and forfeitures should be subject to appropriation and use by the municipal officers for any purpose, such authority would have been stated in clear and explicit language. That is particularly so, since, by the express provisions of the Miller Act (109 O. L., 4), the expense of operation of the state prohibition department is paid from the general revenue fund of the state, into which it had thereto
 
 *524
 
 fore been provided by 'Section 62T2-19, General Code, that one-half of the fines and forfeitures from the enforcement of the prohibition law should be paid.
 

 Section 6212-19, General Code, does not specify when the one-half belonging to the state shall be remitted to the state treasury, and, as Section 4270, General 'Code, has reference only to payments to be made to the county treasury, remittance to the state treasury of fines belonging to the state would, it seems, be governed by the general provisions of Section 289, General Code, which require an officer or employe, collecting or receiving money for a taxing district of which he is not an officer or employe, to pay on Saturday of each week to the proper officer the amount collected by him during the current week. It is difficult to see how it would be possible for any magistrate to comply with the provisions of that section if the theory of the defendant were to prevail that all fines collected were to be held in a fund, subject to deduction of any amount which might be allowed or authorized by the municipal council for the payment of attorneys, detectives, and secret service officers.
 

 These various statutes to which we have referred are
 
 in pari materia,
 
 and when construed together it must be concluded that one-half of the money arising from fines and forfeited bonds resulting from the enforcement of the provisions of the prohibition law known as the Crabbe Act belongs to the state, and that municipal councils are not authorized to expend or appropriate any of such portion for any purpose.
 

 
 *525
 
 This ease could be decided upon the provisions of the ordinance alone, for it is to be observed that in this instance the appropriation for the purpose stated was only 50 per cent, of the moneys to be thereafter paid into the treasury of the village, and, as we have seen, the only money that was paid into the treasury of the village from such source was one-half of the fines collected. But, for the reasons above stated, it is our view that the one-half of the money arising from such fines and forfeited bonds is all that could legally find its way into the treasury of the village, or be subject to the action or order of the council of the municipality.
 

 It is our conclusion, therefore, that the sum of $4,116.12, kept on deposit in bank by the defendant in his name as mayor, belongs to the state, and that the writ of mandamus requiring the remittance thereof to the state treasury should issue.
 

 Writ allowed.
 

 Marshall, C. J., Jones, Day, Allen, Kinkade and Robinson, JJ., concur.